PRESIDING JUSTICE ROMITI delivered the opinion of the court: The defendant, Judith Halprin, an attorney, appeals from an order of the circuit court of Cook County, finding her in contempt of court and fining her $1,000 for making certain statements in the presence of prospective jurors during voir dire examination. In this appeal, defendant contends that the trial court erred in finding her in contempt because of the vagueness of the court’s rulings concerning what statements were prohibited and because she was entitled to make such statements and objections in order to properly represent her client. On July 15, 1981, defendant and two assistant State’s Attorneys appeared before Judge Arthur Cieslik regarding pretrial motions in the matter of Wayne Davis (No. 80-C-4507). Defendant represented Wayne Davis. At that time, defendant made a motion in limine to exclude the State’s prospective witnesses, who were the victims of other rapes allegedly perpetrated by Wayne Davis. After hearing the arguments of counsel, the trial court denied defendant’s motion and directed defendant to proceed with any other matters she had prior to jury selection. However, defendant refused to accept this ruling and proceeded to bring the matter up more than 20 times. Defendant also informed the court that it was not in a position to make such a ruling. Defendant then refused to proceed to her next motion despite numerous requests by the court. After again attempting to continue with the proceedings, the following colloquy took place: “MS. HALPRIN: I am renewing at this time my motion ***. * * * THE COURT: Request denied I heard the arguments on it before. MS. HALPRIN: There is argument on it. THE COURT: Your request is denied. Proceed. I deny it, any further comments will not be allowed and any further comment with reference with that situation existing whereby you will be in contempt of this Court, proceed.” In response, defendant replied that she felt intimidated and asked the court to eliminate the aura of intimidation by removing the threat of contempt; however, the court denied this motion, stating that it felt that counsel was contemptuous of the court. The court further stated that “[a]ny other extracurricular statements heretofore made not probative to the matter before this Court can be cited in contempt by you by me.” Defendant responded that she intended no disrespect for the court. Defendant then made two oral motions, which were denied by the trial court, before the prospective jurors were brought into the courtroom. However, immediately prior to the jury being ushered in, the court informed the prosecutors and defendant that any questions concerning an individual juror were to be submitted in writing unless they were very brief or for the purposes of clarification. Defendant objected to this practice in the following manner: “MS. HALPRIN: Exclusive conduct [sic] the voir dire by the Court and the granting of peremptory challenges to the State are over the objections of the defendant. We’d have a motion that we were prepared to argue upon that voir dire. We are not allowed to argue. THE COURT: Your motion was ruled on and I will stand on my ruling. Okay, would you bring the jury in?” The prospective jurors were sworn, and the trial court informed them that the indictment charged Wayne Davis with the offense of rape. The court then commenced the voir dire examination of each prospective juror seeking such information as residence, prior courtroom experience, marital status, employment, family relationships and their employment, whether the juror had been victimized by crime or the accused, possible prejudice due to the nature of the charge, the ability to give both sides a fair trial, and the relationship of the juror and his family to law enforcement authorities. At this point the State exercised its first peremptory challenge, and defendant then made the following objection in front of the prospective jurors: “MS. HALPRIN: Judge, I am going to object at this point to the State exercising peremptory challenges and would like to be heard on that issue.” A sidebar was then held in chambers where defendant again argued the unconstitutionality of the State’s use of peremptory challenges. While in chambers, defendant argued that defendant Wayne Davis should be present for the sidebar. However, the court denied the request. Defendant persisted in her objection: “MS. HALPRIN: I believe that he’s entitled to be present. THE COURT: He’s not. This is a sidebar proceeding, it’s a discretionary matter of the Court and I refuse to have him present. MS. HALPRIN: Based on what happened I am moving that he be present.” However, the trial court again denied this request, and voir dire was then resumed. After a panel of jurors was examined and the prosecution accepted that panel, defendant responded to the court’s inquiry as to her acceptance of the panel as follows: “MS. HALPRIN: Your Honor, I will move at this time that either this entire panel be dismissed or that further questioning of the panel be conducted pursuant to Chapter 78 of the Illinois Revised Statute which is the chapter dealing with jurors. I do not think that they have been questioned— THE COURT: Your request is denied.” Defendant again moved to question the prospective jurors concerning their qualifications as being of fair character, integrity, sound judgment and who understand the English language. She then stated that she had no idea whether the prospective jurors were of fair character and approved integrity. The court responded, “You never will.” Defendant then asked for a mistrial on the grounds that the court would not permit her to ask a series of questions to the jurors. The court denied this motion as well as defendant’s request to question the jurors. After making this motion five more times, defendant stated that she would not be able to choose the jury. Defendant then said that the court would have to choose the jury because she could not. In response, the court stated: “I will instruct you to make a determination on whether or not you accept this panel and if you fail to do so I will assume that you are accepting them as tendered to you.” Defendant then denied that she was accepting the panel. In response, the court stated, “Then I will find you in contempt if you fail to do so because you are impeding the trial of this case.” Defendant replied that this was the second time she had been threatened by the court. However, the court then said that it was not a threat but a fact. After further discussion, the following colloquy occurred: “MS. HALPRIN: I am not in a position to either accept or reject this panel. Mr. Davis had some questions that have occurred to him. THE COURT: You are his attorney, you must resolve those questions and I am asking for a question from you. MS. HALPRIN: I am not attempting to resolve them for him. THE COURT: I will give you a minute or two, go ahead and resolve those problems. (After a moment.) MS. HALPRIN: I have explained to him as best I can what your ruling has been. He was left with some questions as am I to the sufficiency of the voir dire that you conducted and would therefore ***. THE COURT: You have a right to exercise whatever chailenges you do so. I am asking you to do so at this particular time. MS. HALPRIN: I would like to do that on some further information.” After defendant refused to proceed with the acceptance or rejection of the panel, a recess was held. The following colloquy took place in chambers: “THE COURT: The Court advises defense Counsel that the defendant is not necessary for the hearing that is being conducted by this Court at this particular time. The Court advises and admonishes the defendant’s attorney not to make any comments with reference to any matters involving law, matters that as — have no concern to the jury. If you have any motions to be submitted, they are to be submitted upon the basis of a sidebar. And no comments are to be allowed and any further comments in front of this jury in any way to pollute this jury will result in this defense attorney being found in contempt of this Court period. Thank you, let’s go back out there. MS. HALPRIN: Judge, wait a minute. THE COURT: You heard what I said. MS. HALPRIN: I don’t understand the ruling at all and I don’t know whether I can make objections.” The court then further explained its ruling to defendant: “THE COURT: *** [T]he ruling that I establish is that this attorney representing the defendant [Wayne Davis] herein is precluded from raising any questions which are of no consequence as far as the jury is concerned and that those questions are to be discussed on sidebar discussions period.” Defendant then made a motion to withdraw as Davis’ counsel, which was denied, as was defendant’s motion for dismissal. At this point, defendant asked for a sidebar and stated to the court that, although she found it virtually impossible to make a rational decision, defendant as a “wild guess” wished to excuse one of the jurors tendered to the defense. The trial judge then addressed the jury and apologized for any confusion. The judge indicated that he would strive to conduct himself in the highest traditions of his office and, because of this, he would not be intimidated by anybody; however, the trial judge concluded by stating that he was not making inferences about anyone. In a sidebar, defendant complained that, since she was the only individual in court to have made remarks, the court had created an inference which would be prejudicial to Davis. Defendant then requested that the panel be discharged. However, this request was denied. Following the voir dire of another prospective juror, defendant again complained that the examination of the juror was inadequate. However, the trial court ruled that this particular juror was qualified. In response, defendant replied that upon totally inadequate information she would accept the panel. Further voir dire continued and the panel was tendered to defendant. Defendant then stated, “Judge, again based on your prior ruling limited information available to us we have no challenge.” In response, the court stated, “Okay.” The examination of prospective jurors proceeded again until the State exercised two peremptory challenges. Defendant then renewed her earlier motion. The court replied that it understood the motion and stated that his ruling would be the same. The court then stated that some of the individuals, who had been excused, came within the purview of the defense motion. In response, defendant stated: “Judge, I have absolutely no interest in people that have excused themselves.” At a sidebar requested by the prosecution, the assistant State’s Attorneys complained that they had shown restraint but that defendant was making statements about the State’s conduct before the prospective jurors. The court then stated: “Miss Halprin one more outburst by you and I will declare a mistrial and you will be found in contempt of this Court.” Defendant then persisted in speaking in response to the prosecutor’s statement and again the trial court warned her that one more outburst would result in contempt. Voir dire examination then continued with the State accepting the panel. At this time, defendant questioned some of the inquiries made by the court to a particular prospective juror. In response the court stated that he was satisfied with the questions and asked the defendant for challenges. The following colloquy then occurred: “MS. HALPRIN: Then with our apologies to the jury based on our necessarily limited information Mr. Davis will excuse Mr. Keane and Mr. Weinstein. THE COURT: You are excused, I am going to have a side bar. You are excused.” Out of the presence of the jury the court then found this statement to be in direct violation of its previous warnings, and therefore, held defendant to be in contempt of court. Defendant then asked for the basis of this contempt and the trial court responded: “For your outburst in court when you were instructed not to make any comments with reference to the jurors in there.” The court went on to state: “I have warned you repeatedly, you seem to ignore my warnings. You are fully well aware of restrictions that I imposed upon you. There is no question in my mind that you knew exactly what I told you. You also knew or should have known as a trial attorney what if any comments you are entitled to make to a jury.” Thereafter, the trial court allowed defendant’s previous motion to withdraw as counsel for Mr. Davis. This was made over Davis’ objections. After a hearing, the trial court fined defendant $1,000. As stated above, defendant argues on appeal that her statements in front of the jury were justified as performance by counsel of necessary obligations to her client in that this was the only way she could make an intelligent use of her peremptory challenges. Defendant also maintains that the court’s prior ruling as to her statements in front of the jury was totally vague, and therefore, could not be complied with. A trial court is vested with inherent power to enforce its order and preserve its dignity by the use of contempt proceedings. (People v. Javara,s (1972), 51 Ill. 2d 296, 299, 281 N.E.2d 670.) Direct contempt of court is defined as conduct calculated to embarrass, hinder or obstruct the court in its administration of justice or to derogate from its authority or dignity or bring the administration of law into disrepute. People v. Miller (1972), 51 Ill. 2d 76, 78, 281 N.E.2d 292. In People ex rel. Woodward v. Oliver (1975), 25 Ill. App. 3d 66, 322 N.E.2d 240, an attorney disobeyed a court order not to discuss the trial court’s evidentiary ruling during final argument. Because of this, the trial court found that attorney in direct contempt. This court affirmed, holding that open disobedience of a court order was, in itself, sufficient to support a finding of contempt. 25 Ill. App. 3d 66, 76. We are of the opinion that defendant’s actions and statements were in direct contempt of court. We base this conclusion on the following facts: Initially, defendant erroneously claimed in front of the prospective jury that, unless she was able to conduct the voir dire in hpr own manner, she would be incapable of selecting a jury. After the court specifically informed defendant that additional questions concerning the jury selection would have to be written unless asked only for clarification, defendant continued to argue in the prospective jurors’ presence regarding her statutory right to question them. Defendant also repeated on numerous occasions in the venire’s presence that the court’s questions were inadequate and that no rational decision could be made by her. This statement was made directly after the court had indicated that contempt sanctions might be imposed on defendant if she did not make up her mind whether or not she was going to accept that panel. Thereafter, defendant did accept the panel with the exception of one person but stated: “Again with the totally inadequate information and in a totally uninformed challenge or process of voir dire challenge we will accept this panel.” Defendant then continued to comment in front of the prospective jurors that because of limited information available to her she would not challenge the voir dire selection by the court. In response to such comments, the trial court informed defendant on several occasions that she had made a record for appeal concerning voir dire and that, because of this, no further, similar comments were to be made by her in front of the venire. Immediately after this warning, defendant again stated that based on her limited information she would excuse two jurors. For this reason, we feel that the trial court then properly held her in direct contempt of court since she openly disobeyed the court’s order. It is also our opinion that defendant cannot use the theory of defense advocacy in order to justify her repeated objections. As indicated above, the trial court stated to defendant on numerous occasions that she had made an adequate record for an appeal in this matter regarding the voir dire examination, and that, because of this, further, similar questions in front of the prospective jurors would be held to be contemptuous. Nonetheless, defendant continued to make the same statements in front of the prospective jury members rather than making them in a sidebar conference or by putting them in written form. Accordingly, the trial court properly held defendant in contempt of court. Defendant calls attention to the following comment she made prior to being held in contempt: “Judge, again based upon your prior ruling limited [sic] information available to us we have no challenge.” Defendant argues that, since this comment did not merit a warning of contempt, the trial court’s ruling on her final contemptuous remark was the result of her being poorly guided by the standards imposed upon her by the court. However, the report of proceedings in this matter indicates that defendant constantly maintained that she misunderstood even the most simple ruling. Moreover, the record also demonstrates that defendant ignored the rulings of the court on numerous occasions. Defendant’s last remark, which resulted in the contempt citation, wilfully violated a direct order which had been made to her only moments before. Defendant’s actions were not only contemptuous of the court’s rulings, but hindered the court in its attempt to conduct voir dire examination. In further support of our conclusion, we must point out that, even if defendant believed the trial court’s order to be improper, she was obliged to obey it. (See Schallau v. City of Northlake (1979), 82 Ill. App. 3d 456, 467, 403 N.E.2d 266.) Nor do we feel that People v. Bernard (1979), 75 Ill. App. 3d 786, 394 N.E.2d 819, cited by defendant, is applicable to the present situation. Bernard involved the question of whether or not the restrictive order by the trial court lacked clarity and specificity. Here, defendant was clearly informed of what she was not to comment on before the prospective jurors; however, she constantly violated that order, refusing to recognize the authority of the trial judge. However, the fine of $1,000 is excessive and must be reduced. (County of McLean v. Kickapoo Creek, Inc. (1972), 51 Ill. 2d 353, 282 N.E.2d 720; Harvey v. Carponelli (1983), 117 Ill. App. 3d 448.) In both County of McLean and Harvey the court held that where the penalty imposed exceeds six months’ incarceration or a fine in excess of $500 the record must reflect that the contemnor was offered a jury trial or knowingly and understandably waived that right in open court. The record here does not disclose that plaintiff waived her right to a jury trial and therefore the court could not under County of McLean and Harvey impose a fine exceeding $500. Furthermore, while we agree that defendant’s actions and statements were in direct contempt of court, we do not believe her conduct was so egregious as to warrant more than a minimum fine. For the foregoing reason we affirm the trial court’s order of contempt but reduce the fine to $100. LINN, J., concurs.