THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DEBORAH GRIFFITH, Defendant (James P. Paese *et al.*, Contemnors-Appellants).

First District (1st Division) Nos. 1—91—2650, 1—91—2651 cons.

Opinion filed May 10, 1993.

Frederick F. Cohn, of Chicago (Jo-Anne F. Wolfson, of counsel), for appellants.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Brian Clauss, and George J. Arnold, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Following a lengthy jury trial in the circuit court of Cook County, Deborah Griffith was found guilty of abducting her daughter, Rebekah Ford, from the child's father, Bruce Ford.[1] Griffith was represented at trial by James P. Paese and Beryl Zerwer, whom the record indicates were then affiliated with the public defender's office. Following argument of Griffith's post-trial motion, the trial court found Paese and Zerwer in direct criminal contempt of court. Paese and Zerwer now appeal.

The record on appeal indicates the following facts. After the jury found Griffith guilty of child abduction, Paese and Zerwer sought a free transcript of proceedings from which to prepare a post-trial motion. The trial court denied this request; the record does not indicate why this request was denied. Paese and Zerwer filed a 109-point post-trial motion, supplemented with 200 pages of supporting documents. Argument on the post-trial motion lasted 6½ hours. During a hearing on the motion, the trial court found the two defense attorneys guilty of contempt because they argued in the post-trial motion that the trial

---

[1] See *People v. Griffith* (1993), 249 Ill. App. 3d 1046.

court was not impartial and acted as a "functionary of the State, or a third prosecutor." After the trial court denied Paese's and Zerwer's motions to reconsider, they filed timely notices of appeal.

 A court has the inherent power to punish as criminal contempt conduct that is calculated to embarrass, hinder or obstruct a court in its administration of justice or to derogate from its authority or dignity or to bring the administration of law into disrepute. (See *People v. Ernest* (1990), 141 Ill. 2d 412, 421, 566 N.E.2d 231, 235.) However, the summary nature of direct criminal contempt proceedings requires that this court be provided with a reviewable record from which this court may determine whether the trial court had jurisdiction to enter a contempt order. See *People v. Tomashevsky* (1971), 48 Ill. 2d 559, 564, 273 N.E.2d 398, 402.

In this case, there does not appear to be a written contempt order that fully, clearly and specifically explains the contumacious acts. *Tomashevsky* suggests both that a direct criminal contempt commitment cannot exist without a written order and that it is possible that a record could reflect oral findings and an order adequate to support the charge of direct contempt. (*Tomashevsky*, 48 Ill. 2d at 564-65, 273 N.E.2d at 402.) The record on appeal does contain the transcripts of proceedings where Paese and Zerwer were found in contempt. The record also contains an entry on the half-sheet indicating the finding of contempt. It is unclear whether this record is sufficient to sustain the charge under *Tomashevsky*.

 Nevertheless, assuming *arguendo* that the record clearly and sufficiently indicates the acts upon which the charge of contempt was based, the finding of contempt must be reversed. Both elements of criminal contempt, an intent and an act, must be proven beyond a reasonable doubt. (*City of Chicago v. Hart Building Corp.* (1969), 116 Ill. App. 2d 39, 253 N.E.2d 496.) Intent in criminal contempt cases has been defined as a voluntary act by one who knows or who should reasonably know that the act is wrongful. (*People v. Bertelle* (1987), 164 Ill. App. 3d 831, 833, 518 N.E.2d 332, 334.) Where the conduct complained of is that of an attorney engaged in the representation of a litigant, the search for the essential elements of the crime of contempt must be made with full appreciation of the contentious role of trial counsel and his or her duty to zealously represent the client's interests. (*People v. Coulter* (1992), 228 Ill. App. 3d 1014, 1021, 594 N.E.2d 1157, 1161.) A vigorous, independent bar is indispensable to our system of justice. (*People v. Simac* (1992), 236 Ill. App. 3d 1096, 1102.) Therefore, if a contemnor can show that the conduct was a good-faith attempt to represent his or her client without hindering the

court's functions or dignity, a finding of direct contempt will be reversed upon review. *People v. Miller* (1972), 51 Ill. 2d 76, 281 N.E.2d 292.

■ In this case, the trial court based its contempt order upon defendant's post-trial motion, in which contemnors alleged, at the end of a list of rulings with which they disagreed, that the trial court engaged "in conduct to lead one to believe that the court was a functionary of the State or a third prosecutor." The record indicates that the trial court interpreted this statement as stating that the trial judge *was* a functionary of the State and a third prosecutor. Whether this interpretation equates to proof beyond a reasonable doubt of contempt is questionable.

This court has considered on more than one occasion the allegation that a trial judge abandoned his or her judicial role and adopted the role of a prosecutor. (*E.g., People v. Murray* (1990), 194 Ill. App. 3d 653, 658, 551 N.E.2d 283, 287; *People v. Hicks* (1989), 183 Ill. App. 3d 636, 646, 539 N.E.2d 756, 762.) In *Murray* and *Hicks*, this court concluded that those claims did not warrant reversal. Yet those cases referred to earlier precedent where such claims were successful. Moreover, the language employed in cases such as *Murray* and *Hicks* suggests that the language employed by contemnors in defendant's post-trial motion falls within the scope of hyperbole characteristic of our adversarial system of justice. This is not to say that attorneys are free to revile trial judges at will. However, the particular allegation here, which for better or worse has found its way into the legal lexicon, is not, by itself, proof beyond a reasonable doubt of intent to embarrass or hinder the court.

For all of the aforementioned reasons, we reverse the finding of contempt entered by the circuit court of Cook County.

Reversed.

MANNING, P.J., and O'CONNOR, J., concur.